USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1703 WALTER DEARY, ET AL., Plaintiffs, Appellees, v. CITY OF GLOUCESTER, ET AL., Defendants, Appellees, _________ JOHN BICHAO, Defendant, Appellant. _____________________ No. 92-1777 WALTER DEARY, ET AL., Plaintiffs, Appellants, v. CITY OF GLOUCESTER, ET AL., Defendants, Appellees. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ___________________ ____________________ Before Boudin and Stahl, Circuit Judges, ______________ and Fuste,* District Judge. ______________ ____________________ Leonard H. Kesten with whom Thomas M. Elcock and Morrison, ___________________ __________________ _________ Mahoney & Miller were on brief for John Bichao, City of Gloucester, _________________ David A. Reardon, Howard Maki, John Beaudette, Harold Reardon, James Hubbard and Chief Earland Whortley. Edmund M. Pitts with whom Edmund R. Pitts and Pitts & Pitts were _______________ _______________ _____________ on brief for Walter Deary. ____________________ November 17, 1993 ____________________ _____________________ *Of the District of Puerto Rico, sitting by designation. FUSTE, District Judge. This appeal arises from a FUSTE, District Judge. ______________ police misconduct action brought under 42 U.S.C. 1983 and Massachusetts law. Defendant John Bichao appeals contending that (1) bias on the part of the trial judge denied him a fair trial; (2) evidence regarding a prior disciplinary action against one of the witnesses was incorrectly admitted; and (3) attorneys' fees were erroneously granted to plaintiffs' attorneys. We affirm on all grounds. I. I. Background Background __________ Walter Deary and his brother Robert brought suit against six Gloucester police officers, the Mayor, the Chief of Police, and the City of Gloucester, based on an incident which occurred on March 29, 1986.1 The Dearys alleged that the defendant police officers physically assaulted them and engaged in a cover-up regarding the incident. After the plaintiffs' case, the court directed verdicts for each of the police officers, except Officer Bichao.2 The main issue in the case was an allegation that Officer Bichao kicked Walter Deary twice in the head. The jury awarded Walter Deary $25,000 in ____________________ 1The claims against the city, the Mayor, and the Chief of Police were bifurcated from those against the individual officers. 2Plaintiffs filed a cross-appeal requesting that if a new trial were granted to Defendant Bichao, then this court should also reverse the directed verdicts granted to defendants Earland Whortley, David Reardon, Howard Maki, John Beaudette, Harold Reardon, and James Hubbard, the other Gloucester police officers. Because we affirm, we do not reach plaintiffs' alternative request. -2- 2 compensatory damages and $75,000 in punitive damages, and found for Bichao on the claims brought by Robert Deary. The court granted $112,295 in attorneys' fees and $8,977.50 in costs to the plaintiffs' attorneys under 42 U.S.C. 1988. II. II. Discussion Discussion __________ A. Allegations of Bias of Trial Judge A. Allegations of Bias of Trial Judge __________________________________ Officer Bichao requests a new trial, alleging that the trial judge was so biased towards the plaintiffs as to deprive the defendant of a fair trial. Bichao lists numerous incidents during the trial which he contends were indicative of the bias of the judge. These events may be divided into three types: (1) claims that the judge made comments indicating that defendant's counsel was proceeding too slowly; (2) claims that the judge's questioning of witnesses reflected bias and partiality for the plaintiffs; (3) allegations regarding disputes between defendant's counsel and the judge, which Bichao claims created a prejudicial effect against the defendant. Bias and improper conduct by a trial judge may be grounds for a new trial if a party is so seriously prejudiced as to be deprived of a fair trial. Aggarwal v. Ponce School of _____________________________ Medicine, 837 F.2d 17, 21-22 (1st Cir. 1988). However, mere ________ active participation by the judge does not create prejudice nor deprive the party of a fair trial. Id. On appeal, we must ___ "consider isolated incidents in light of the entire transcript so as to 'guard against magnification on appeal of instances which -3- 3 were of little importance in their setting'." Aggarwal at 22 ________ (quoting Glasser v. United States, 315 U.S. 60 (1984)). ________________________ Bichao cites several instances during the trial where Judge Tauro encouraged defense counsel to advance the pace of questioning, or was unsatisfied with counsel's utilization of time. The trial judge has discretion to maintain the pace of trial, and indeed "has the responsibility to oversee the conduct of a trial so that it moves expeditiously". Desjardins v. Van _________________ Buren Community Hosp., 969 F.2d 1280, 1281 (1st Cir. 1992) ______________________ (noting that requests by the judge that counsel not be repetitive are "routine"). Therefore, encouraging counsel to move forward, forbidding counsel from eliciting duplicative testimony, or halting what the court perceived to be a waste of time, was firmly within the discretion of the trial judge. Next, Bichao alleges that the trial judge exhibited bias towards the plaintiffs by interjecting questions during defense counsel's direct and cross-examination of several witnesses, including Bichao himself. The court has the prerogative to interrogate witnesses, and the duty to do so where necessary to clarify testimony, but the judge must maintain an air of impartiality. United States v. Paz Uribe, 891 F.2d 396, __________________________ 400 (1st Cir. 1989), cert. denied, 495 U.S. 951 (1990). "Trial _____ ______ judges are constantly making judgments about . . . the need to clarify witness answers, and similar matters of trial management. In this realm, the widest possible latitude is given to the judge -4- 4 on the scene." Rodr guez v. Banco Cent. Corp., 990 F.2d 7, 13 _______________________________ (1st Cir. 1993). Bichao argues that the judge's questioning of the plaintiff's medical expert, Dr. Starr, undermined defense counsel's credibility, and reflected bias by the judge. A review of the transcript reveals that the judge's questions were meant to clarify the testimony of the witness. During cross- examination, Dr. Starr had discussed a number of documents which the jury did not have in front of them. The court asked some questions in order to elucidate which document the questions referred to, and which section of the report counsel was discussing. These questions were clearly within the discretion of the trial court. Bichao also contends that the court was overzealous in its questioning of Officers Maki and Beaudette during direct examination, and as a result destroyed the credibility of the two witnesses. Officer Maki was the person who was closest in physical proximity to Walter Deary when the alleged kicks by Bichao were administered. The judge questioned him in order to clarify Maki's statement about his lack of memory of the kicking. This issue was central to the case, and the judge was acting within his discretion to ensure that Maki's testimony was clear. Similarly, the court's questioning of Officer Beaudette was unbiased and aimed at illuminating his testimony. Bichao claims that when he was being cross-examined by plaintiff's counsel, the judge made uncivil remarks and asked -5- 5 hostile questions of him. A close examination of the transcript reveals that the judge occasionally instructed the witness to answer the questions which were presented to him, and asked questions to elucidate Bichao's testimony. These directions and questions did not rise to the level of partiality, but rather were made with the purpose of obtaining answers to the questions posed and clarifying the answers given. Finally, Bichao identifies several exchanges in the transcript which he claims reflect a certain amount of animosity between the judge and defense counsel. Some of these incidents occurred outside of the hearing of the jury, where they could not have influenced the jury decision. However, Bichao points to a sidebar conference during which the judge stated that he found defense counsel's cross-examination of the medical expert to be "very devious". At the time, the judge asked the jury whether they could hear the sidebar conference and one juror stated that he was able to hear "a little bit". This episode, taken in the context of a nine-day trial, does not warrant appellate intervention. When the judge questioned the jury about this incident, only one of the eight members stated that he could hear a little bit of the conference. It is unclear whether the "devious" comment itself was overheard by that one juror. Even assuming that the one juror did hear the statement, we find that, viewing the trial transcript as a whole, the comment is insufficient to sustain a finding of bias on the part of the trial judge, or prejudicial impact on the trial. T r i a l -6- 6 judges need to maintain strict control over judicial proceedings and as a result it would be unrealistic to suggest that trials should always be models of harmony. Although any display by the trial judge of unwarranted irritation or displeasure directed towards counsel ought to be avoided, friction between the court and counsel does not constitute pervasive bias. See Arthur ___ ______ Pierson & Co. v. Provimi Veal Corp., 887 F.2d 837, 839 (7th Cir. ___________________________________ 1989); Hamm v. Board of Regents, 708 F.2d 647, 650 (11th Cir. _________________________ 1983). Bichao contends that the judge failed to give the jury general or specific curative instructions regarding any of these incidents. But defendant failed to request any specific curative instructions during the course of the trial. Furthermore, the jury charge instructed the jurors that they were the "sole judges of the weight and effect of all of the evidence" and that the evidence in the case did not include statements of the judge or counsel. The defendant was not prejudiced by any conduct of the trial judge, and a new trial is not warranted. B. Evidence of Disciplinary Action B. Evidence of Disciplinary Action _______________________________ During the cross-examination of Officer Reardon, who was the commander on duty on the night of the alleged assault, the plaintiffs' attorney questioned Reardon about the reputation for truthfulness of Officer Maki. When Reardon responded that he had never known Maki to be untruthful, counsel asked whether Reardon was aware of an incident in which Maki was disciplined after he was untruthful when filing an overtime report. Reardon -7- 7 denied knowledge of the event. Plaintiffs' counsel then called Officer Maki back to the stand for rebuttal testimony and questioned him about the incident. Maki admitted that it had happened, and documents regarding the event were then allowed into evidence. Maki explained his version of the incident on cross-examination by defense counsel. Bichao contends that allowing evidence of this event was erroneous for a number of reasons. First, Bichao argues that it was improper to question Reardon about his opinion of Maki's reputation for truthfulness because Maki's character had not been put into issue by the defense. Under Fed. R. Evid. 608, evidence of the truthful character of a witness is only admissible after the witness' character has been attacked, but there is no corresponding limitation on introducing evidence about the untruthfulness of a witness.3 Officer Maki was the officer who was located closest ____________________ 3Federal Rule of Evidence 608 provides: (a) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise. (b) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the -8- 8 to Officer Bichao when the alleged kicks to Walter Deary's head took place. His testimony about the arrest was crucial to the trial. By testifying to the events of the night in question, he put his credibility into issue. Questions to his supervisor regarding the supervisor's opinion of Officer Maki's truthfulness were clearly proper. Bichao also contends that the disciplinary event was too remote in time to allow cross-examination regarding the suspension. When a witness has testified as to the character of another witness, Fed. R. Evid. 608(b) allows inquiry about specific instances of conduct concerning the truthfulness of the principal witness. Although the time which has elapsed since the prior bad act is a consideration for the judge to take into account when determining whether to admit such character evidence, close proximity in time is not required under Fed. R. Evid. 608(b). United States v. McClintic, 570 F.2d 685 (8th Cir. __________________________ 1978). The incident involving Maki occurred ten years prior to the trial. The discipline resulted from the fact that Officer Maki was untruthful in filing an overtime report. It was within the discretion of the trial judge to allow plaintiffs' counsel to ____________________ court, if probative of truthfulness or untruthfulness, be inquired into on cross- examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. -9- 9 question Officer Reardon about his knowledge of this event, since the incident was relevant to Officer Maki's credibility. Next, Bichao argues that the admission of the rebuttal testimony of Maki and the documents regarding the event was an error because each constituted extrinsic evidence used to controvert Officer Reardon's denial of knowledge regarding the disciplinary incident, in violation of Fed. R. Evid. 608(b). While we agree that the rebuttal testimony of Maki and the documents should not have been admitted, we find the error to be harmless for the reasons enumerated below. Fed. R. Evid. 608 prohibits the introduction of extrinsic evidence to prove specific instances of the conduct of a witness for the purpose of attacking or supporting the witness' credibility. Therefore, although a witness can be questioned about particular events, once the witness has denied or admitted knowledge of the occurrence on cross-examination, the examiner must accept the answer given by the witness. U.S. v. Tejada, 886 ______________ F.2d 483, 488 (1st Cir. 1989). The purpose of the ban on extrinsic evidence is "to avoid holding mini-trials on irrelevant or collateral matters". United States v. Beauchamp, 986 F.2d 1, ___________________________ 3 n.1 (1st Cir. 1993). Here, plaintiffs' recall of Officer Maki on rebuttal was an unnecessary foray, resulting in a waste of the court's time. Officer Reardon stated on cross-examination that he had no knowledge of the disciplinary action involving Officer Maki. Questioning about the event should have been stopped at that juncture. Under Fed. R. Evid. 608(b), plaintiffs could have -10- 10 questioned Maki about the disciplinary suspension during his original testimony, since it was probative of Maki's character for truthfulness or untruthfulness. However, such questioning would not have involved the time expended in recalling Maki to the stand, and therefore the original admissibility does not render the rebuttal questioning acceptable. The documents regarding the disciplinary event provided further extrinsic evidence of the suspension. As such, they would not even have been admissible during Maki's original testimony, and should not have been allowed during rebuttal. Although Maki's rebuttal testimony and the documents regarding the suspension should not have been admitted under Fed. R. Evid. 608, we find that the error was harmless. "In determining whether or not the error was harmless, a reviewing court must assess the record as a whole to determine the probable impact of the improper evidence upon the jury. United States v. ________________ Mateos-Sanchez, 864 F.2d 232, 237 (1st Cir. 1988) (citing United ______________ ______ States v. Currier, 821 F.2d 52, 56 (1st Cir. 1987). In ___________________ determining whether evidence erroneously admitted in contravention of Fed. R. Evid. 608 was harmful, this court has examined such factors as whether the admission allowed completely new evidence before the jury, and whether the disputed evidence was likely to arouse undue passion or prejudice to the jury. Id. __ In this case, during the cross-examination of Officer Reardon, plaintiffs' counsel raised the possibility in front of the jury that Officer Maki may have been involved in an incident on the -11- 11 police force where his truthfulness was questioned. The information about the event, while probative of untruthfulness of one of the witnesses, was not likely to unduly inflame the jury against the defense. Furthermore, but for counsel's omission, the disciplinary action would have been brought out when Officer Maki was initially testifying in the case. In addition, Officer Maki had an opportunity to explain the incident on cross- examination during rebuttal. The error is insufficient to merit reversal. C. Attorneys' fees C. Attorneys' fees _______________ Finally, appellant challenges the award of attorneys' fees to plaintiffs' attorneys granted under 42 U.S.C. 1988. Bichao claims that the records submitted by the lawyers were not contemporaneous and that the billing rate requested was inflated, and seeks a reduction of the fee award to reflect the fact that only one of the plaintiffs prevailed on one of the claims. District courts have discretion in awarding fees and costs in civil rights cases, but must carry out more than a conclusory examination of the hours and rates requested. Grendel's Den, ______________ Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). Normally, _______________ appellate courts should "defer to any thoughtful rationale and decision developed by a trial court and . . . avoid extensive second guessing." Id. __ In order to recover fees, attorneys must submit a full and precise accounting of their time, including specific information about number of hours, dates, and the nature of the -12- 12 work performed. Calhoun v. Acme Cleveland Corp., 801 F.2d 558, _______________________________ 560 (1st Cir. 1986). If such documentation is not submitted, fees should be reduced or even denied altogether. Grendel's Den, _____________ 749 F.2d at 952. Here, Judge Tauro noted that the attorneys submitted all of this information, and found that the records were "essentially contemporaneous and . . . reliable". Deary v. ________ Gloucester, 789 F.Supp. 61, 64 (D.Mass 1992). The attorneys __________ submitted affidavits, as well as the actual time slips. Following the admonition in Grendel's Den, the district court _____________ deducted hours from the total requested where the records were not sufficiently precise or were not in chronological order, and where the time slips failed to correspond with the attorney's affidavit. The court denied seventy-eight hours out of the 699.4 hours requested. The district court must also make a finding as to the prevailing market rate, based on evidence other than the attorneys' affidavits. Bordanaro v. McLeod, 871 F.2d 1151, 1168 ____________________ (1st Cir. 1989), cert. denied, 493 U.S. 820 (1989). The judge _____________ here noted that counsel submitted affidavits from other Boston attorneys regarding fees in similar cases, as well as information about billing rates for Massachusetts law firms. The court examined this information, as well as the attorneys' experience levels in assessing the correct hourly billing rate. In addition, the court awarded lower hourly rates than those requested for pretrial work performed by counsel. Finally, the court detailed its reasoning for refusing a reduction in fees due -13- 13 to the fact that only one of the plaintiffs was successful against one defendant and for refusing a request by plaintiffs' counsel for a risk factor enhancement of fees. We find that the district court more than adequately analyzed the issue of attorneys' fees, and explained its reasoning for the amount of fees granted. III. III. Conclusion Conclusion __________ In sum, we affirm the holding below. The judge did not display actionable bias against the defendant. Although the evidence regarding Officer Maki's suspension was incorrectly admitted under Fed. R. Evid. 608 through the rebuttal testimony of Officer Maki, the error was harmless. The district court appropriately detailed its reasoning in granting the attorneys' fees and costs, and the award will not be disturbed on appeal. Affirmed. Affirmed. _________ -14- 14