**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 03-2102

PETER RUFFIN,

Plaintiff, Appellant,

v.

CITY OF BOSTON; DAVID C. WILLIAMS; JAMES GRIFFIN; PAUL EVANS;
ANN MARIE DOHERTY; and SEVERAL UNKNOWN CITY OF BOSTON POLICE
OFFICERS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, Senior U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch and Lipez, Circuit Judges.

Stephen A. Roach, with whom Roach & Wise, LLP was on brief,
for appellant.
Eve A. Piemonte Stacey, Assistant Corporation Counsel, City of
Boston Law Department, with whom Merita A. Hopkins, Corporation
Counsel, was on brief, for appellees City of Boston, James Griffin,
Paul Evans, Ann Marie Doherty, and Several Unknown City of Boston
Police Officers.
Scott P. Lopez, Special Assistant Corporation Counsel, with
whom Merita A. Hopkins, Corporation Counsel, was on brief, for
appellee David C. Williams.

September 2, 2005

**LIPEZ, Circuit Judge**. This appeal stems from an excessive force claim against several Boston police officers. Plaintiff-appellant Peter Ruffin, who suffered injuries during an altercation with police, alleged that the officers had beaten him without provocation and then participated in a cover-up designed to shift attention away from their conduct and towards some incidental property damage Ruffin had inadvertently caused while being beaten. The case proceeded to jury trial and the jury found for the defendant police officers. On appeal, Ruffin mainly challenges various evidentiary rulings and trial management decisions. Many of these claims were not preserved below. Having carefully reviewed the record of the entire trial, and concluding that Ruffin received a fair trial, we affirm.

**I.**

**A.    Factual Background**

This case turned entirely on a factual dispute about what actually happened in the early morning hours of May 5, 1996. A total of ten witnesses to the altercation (or part of it) testified -- five (including Ruffin himself) on behalf of Ruffin and five (including defendants Williams and Griffin) on behalf of defendants. Not surprisingly, each witness's version varies substantially from that of every other witness, and the truth is difficult to determine. We provide only a brief summary of the facts, reciting them in the light most favorable to the jury's

verdict.  United States v. Castellini, 392 F.3d 35, 39 (1st Cir. 2004).

In the early morning hours of May 5, 1996, Ruffin was with family and friends at a bar in Dorchester, Massachusetts. Over the course of the day, Ruffin had consumed some eight beers in eleven hours.  Ruffin's sister, Colleen O'Herlihy, also had been drinking.  When she left to drive home, the family was concerned that O'Herlihy had imbibed too much to drive safely, and followed her to the parking lot.  Ruffin approached her and attempted to persuade her not to drive.  O'Herlihy was resistant, and the two began arguing in loud voices.  A neighbor viewed the argument from a distance and mistakenly believed that Ruffin was attacking O'Herlihy.  She called 911 and reported a "man beating a woman."

Boston police officers Williams and Griffin, defendants-appellees, responded to the 911 dispatcher and arrived at the parking lot.  They saw Ruffin pinning O'Herlihy to the ground, and ordered him to get off her.  As the officers attempted to pull Ruffin off O'Herlihy, he yelled profanities and racial slurs.[1]  A struggle ensued as the officers attempted to arrest and handcuff Ruffin and he fought them.  During this scuffle, both Ruffin and Griffin were injured, Ruffin more severely.  Ruffin's family and friends witnessed various portions of this altercation.

---

[1]Ruffin is white; Griffin and Williams are black.

-3-

One of the officers made an "officer in trouble" radio call, and other officers responded shortly. Ruffin was eventually placed into the back of a police cruiser. He continued struggling and kicked out the rear passenger window. The officers then moved him to a windowless wagon for transportation to the police station. At the station, Ruffin continued to be combative and uncooperative. An emergency medical technician (whose treatment Ruffin refused) noted in his log that Ruffin was intoxicated and belligerent.

## B. Procedural History

Three years after the incident, Ruffin filed suit against named and unknown police officers, the City of Boston, former Police Commissioner Paul Evans, and Superintendent Ann Marie Doherty, alleging various federal and state claims. Ruffin alleged that Williams had struck him from behind without provocation and that the officers had then beaten him severely while he offered no resistance. According to Ruffin, as he was being placed into the back of the police cruiser, Williams choked Ruffin and stuck his thumb into Ruffin's eye with such force that Ruffin began flailing and involuntarily kicked out the window. Police supervisors then used this broken window as a pretext to explain the beating and covered up the real nature of the event.

Ruffin's complaint alleged, inter alia, that defendants violated his civil rights by using unreasonable force, failing to intervene, covering up a civil rights violation by false or

misleading statements, and conspiring to cover up a civil rights violation. The district court severed the individual liability claims against Williams and Griffin from the supervisory claims against the other defendants, and the federal claims under 42 U.S.C. § 1983 from the state law claims.

The § 1983 claims against the two named officers proceeded to jury trial. At the close of the plaintiff's case, the court granted the defendants' motion for judgment as a matter of law on Ruffin's cover-up and conspiracy to cover-up claims. The excessive force and failure to intervene claims were submitted to the jury, which returned verdicts for the defendants. The district court then dismissed Ruffin's remaining federal claims against the supervisory defendants and the City, and transferred the state law claims to Massachusetts state court. Ruffin timely appealed.

**II.**

Ruffin raises various claims on appeal, arising from pretrial discovery rulings, evidentiary rulings at trial, the district court's trial management, and its grant of partial judgment as a matter of law for defendants. We address the alleged errors approximately in the order in which Ruffin presents them, combining two issues that are better treated together.

**A.    Admission of Thomas Finn's Report and Testimony**

While Ruffin was at the police station, Emergency Medical Technician Thomas Finn evaluated Ruffin's injuries and offered

medical treatment, which Ruffin refused. Although by the time of trial Finn could no longer recall the events of May 5, 1996, he had contemporaneously recorded his observations in a brief patient care report. The report, besides describing Ruffin's injuries, noted that he had refused treatment, which contradicted Ruffin's testimony that he had never been offered treatment. The report also noted "obvious ETOH"[2] and "belligerent toward authority."

Before trial, Ruffin moved in limine to exclude Finn's testimony and report on the grounds that the evidence was relevant only to an earlier claim of failure to provide medical assistance, which Ruffin had voluntarily dismissed. In a separate document, Ruffin objected to the notation "belligerent towards authority." At trial, the defense sought to put Finn on the stand and to introduce the report into evidence. Over Ruffin's objection, the court permitted Finn to testify based on the report (since he had no independent recollection) and permitted the defense to publish the report to the jury.

On appeal, Ruffin argues that Finn's report and testimony based upon that report were inadmissible hearsay. Appellees respond that the report was admissible under various hearsay exceptions. See Fed. R. Evid. 803(1) (present sense impression), 803(5) (past recollection recorded), 803(6) (business record),

---

[2]"ETOH" is an abbreviation for ethyl alcohol. As Finn later explained, the phrase "obvious ETOH" referred to his impression that Ruffin was intoxicated.

803(8) (public record). Appellees further argue that any statements by Ruffin incorporated into the report (and hence double hearsay) are admissible under other rules. See Fed. R. Evid. 613(b) (extrinsic evidence of prior inconsistent statement for impeachment), 801(d)(2)(A) (admission by party opponent), 803(2) (excited utterance), 803(3) (existing state of mind), 803(4) (statements for purpose of medical diagnosis). Ruffin also argues that Finn was biased because he was a member of the Boston Police Patrolman's Association and, by virtue of his position, sympathetic to police officers.

We review the district court's admission of disputed evidence for abuse of discretion. United States v. Flemmi, 402 F.3d 79, 86 (1st Cir. 2005). Finn's own observations contained in the patient care report were admissible as, at least, business records under Rule 803(6). Double hearsay statements by Ruffin in that report were admissible as statements of a party-opponent under Rule 801(d)(2)(A). Finally, Ruffin was able to develop in cross-examination his theory that Finn was biased towards police officers and had a motive to falsify his report to buttress the officers' account. Ultimately, the admissibility of the report and testimony were quintessential discretionary calls for the trial court, and the court did not abuse its discretion in admitting that evidence.

**B.    Inquiry into Williams's Job Status, Reputation, and/or Prior Bad Acts**

1.    The Excluded Testimony

Before the complaint in this case was filed, Williams was terminated from the Boston police for an unrelated incident of alleged excessive force.[3]  He has not been a member of any police force since then.

Not surprisingly, Ruffin wished to explore Williams's reputation, employment history, and prior excessive force history, and Williams wished to avoid it.  The issue first surfaced during direct examination of Ruffin himself.  Ruffin's counsel asked whether, before May 5, 1996, Ruffin had ever seen Williams.  Ruffin started to answer that he had once seen Williams (presumably off-duty) in a business establishment in Dorchester.  Williams's counsel objected, and it emerged that Ruffin would testify that Williams was wearing a shirt (presumably not official department issue) that said words to the effect of "Boston Police, Toughest Gang There Is."  Williams's counsel again objected on the ground of relevance, and the court sustained the objection.  The following exchange then occurred:

---

[3]In 1998, a federal civil jury found Williams liable in that incident for, inter alia, excessive force, assault and battery, deliberate indifference to excessive force, and deliberate indifference to medical needs.  See Cox v. City of Boston, No. 95-12729 (D. Mass. filed Dec. 18, 1995), docket entry 420 (Dec. 22, 1998) (jury verdict).  We may take judicial notice of court proceedings.  Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001).

MR. ROACH [Ruffin's counsel]: I'd like just to say one thing for the record, Your Honor. I'm sorry to keep you. I'm going to put into evidence later on in this case, I just want you to know, there are -- people around Dorchester in the community, specifically his mother, other people knew Dave Williams and he had a reputation. I am going to try to put that into evidence at some point.

MR. LOPEZ [Williams's counsel]: His reputation?

MR. ROACH: Under Rule 404.

THE COURT: I am not going to let it in because the issue already is narrow: Did they beat him or didn't they. His reputation is irrelevant because there is no extortion, there is no fear --

MR. ROACH: Well, I think the defense, Your Honor, is going to say --

THE COURT: Well, let's see what the defense does.

MR. ROACH: Can I make an offer of proof on the record on this?

THE COURT: Well, you may, but not at this time.

MR. ROACH: Okay.

The issue later arose before Williams's direct examination. Williams's counsel requested a sidebar to clarify whether Ruffin would be able to cross-examine Williams regarding his current job status and to object to such cross-examination as irrelevant. Ruffin's counsel advised the court that he wished to "ask him if he's still employed as a police officer, yes or no, sir, what do you do. That is it, I'm not going to ask him about

why or anything." The court described that as "a dangerous question," and inquired whether "the purpose of [your] asking it is to leave the inference . . . that he was kicked out for good cause, [because] it's prejudicial if it didn't grow out of this case." Ruffin's counsel confirmed that Williams's termination was unrelated to this case, and the court sustained the objection.

2.   Analysis

On appeal, Ruffin challenges the district court's exclusion of inquiry into Williams's job status, disciplinary history, and reputation.[4]

First, he challenges the court's ruling preventing him from inquiring into Williams's present job status. He notes that under Fed. R. Evid. 608(b), "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . . may, . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness." Fed. R. Evid. 608(b).

Ruffin's argument fails for two independent reasons. First, he did not argue below that character for truthfulness was a basis for the inquiry, but rather tacitly confirmed the district

_____

[4]He does not challenge the exclusion of the testimony about Williams's shirt.

court's suspicion that the purpose of the question was to create an inference of propensity to engage in misconduct. Consequently, any argument that the evidence was admissible under Rule 608 is forfeited. See Tate v. Robbins & Myers, Inc., 790 F.2d 10, 12 (1st Cir. 1986) ("[I]f evidence is excluded because it is inadmissible for its only articulated purpose, the proponent of the evidence cannot challenge the ruling on appeal on the ground that the evidence 'could have been rightly admitted for another purpose.'") (citation omitted). Second, the district court "has wide discretion under Rule 608(b)," Navarro de Cosme v. Hospital Pavia, 922 F.2d 926, 933 (1st Cir. 1991), as well as Rules 402 (inadmissibility of irrelevant evidence), 403 (exclusion of relevant evidence on grounds of prejudice), and 404(b) (exclusion of evidence of other acts to demonstrate propensity to act in a certain fashion). The court was entitled to find that the question ran afoul of any or all of the above rules. Put another way, the inference that Ruffin wished to raise -- that because Williams had been terminated for an unrelated incident, he was probably at fault in this incident too -- is precisely the type of inference that the Federal Rules of Evidence seek to prevent a party from raising. While the specific question that Ruffin wanted to ask was not so blatantly prejudicial that the district court was required to exclude it, the court certainly was not required to permit it either, and did not abuse its discretion in excluding it.

Second, Ruffin challenges the district court's exclusion of evidence concerning Williams's reputation or prior bad acts. Such evidence can, in appropriate circumstances, be admissible for limited purposes. See generally Fed. R. Evid. 404(b) (evidence of other acts may be admissible to show, e.g., "absence of mistake or accident"), 608(a) (impeachment by reputation for truthfulness), 608(b) (impeachment by specific instances of conduct). On the other hand, that type of evidence also carries the risks of unfair prejudice, see Fed. R. Evid. 403, or being misused to demonstrate propensity to act in a certain way, see Fed. R. Evid. 404(b). The balance is delicate, and courts have occasionally held that it was erroneous to exclude such evidence. See, e.g., Carson v. Polley, 689 F.2d 562, 571-572 (5th Cir. 1982) (reversing district court's exclusion of performance evaluations of two deputy sheriffs stating that they needed to control their tempers, holding that one report was admissible under Rule 404(b) to show intent to harm plaintiff inmate, and other was admissible under Rule 608(b)).

We realize that evidence of other instances in which Williams allegedly used excessive force might have been helpful to Ruffin in swaying the jury. However, there was also a risk that, despite any limiting instructions, the jury would use the evidence not just to evaluate Williams's truthfulness, but also to establish a propensity for such conduct. The district court was in the best position to determine whether the risk of unfair prejudice would

outweigh the legitimate uses of the evidence, and we are reluctant to disturb its ruling given the wide latitude we accord to trial judges in this area. We do not find an abuse of discretion.

Other rulings to which Ruffin objects are easily resolved. First, he argues that permitting the defense to refer to Williams as "Officer" Williams, in the present tense, was prejudicial to Ruffin because it created the false impression that Williams was still a police officer. Since he did not contemporaneously object, we review only for plain error, Fed. R. Evid. 103(d); <u>Bandera</u> v. <u>City of Quincy</u>, 344 F.3d 47, 55 (1st Cir. 2003), and find none. Second, he argues that the district court erroneously excluded evidence of Williams's reputation.[5] But, despite the court's statement that counsel could make an offer of proof on the record at some later point, counsel never attempted to introduce evidence of Williams's reputation. Since he did not

_____

[5]Ruffin never explained, either to the district court or in his appellate brief, whether he meant to offer evidence of Williams's reputation for <u>truthfulness</u> or his reputation for <u>violence</u>. However, at trial Ruffin's counsel explained that the basis for admitting reputation evidence was Rule 404. The only basis under Rule 404 for admitting evidence of a civil defendant's reputation is Rule 404(a)(3), which permits, <u>inter alia</u>, evidence of a witness's character for truthfulness pursuant to Rule 608(a). Consequently, we assume, for purposes of this appeal, that Ruffin intended to introduce evidence of Williams's reputation for truthfulness. Evidence of a reputation for violence would probably not have been admissible under any rule; reputation evidence "may refer <u>only</u> to character for truthfulness or untruthfulness." Fed. R. Evid. 608(a)(1) (emphasis added).

-13-

attempt to offer such evidence, he cannot complain on appeal that it was not permitted.  <u>See</u> Fed. R. Evid. 103(a)(2).[6]

## C.  Deprivation of a Fair Trial

Ruffin asserts that various comments made by the district court during the course of the trial, concerning the credibility of Ruffin, one of his witnesses, his counsel, and an ultimate issue in the case, denied Ruffin a fair trial.  Our standard of review for such charges reflects the realities of trial management:

> Bias and improper conduct by a trial judge may be grounds for a new trial if a party is so seriously prejudiced as to be deprived of a fair trial.  However, mere active participation by the judge does not create prejudice nor deprive the party of a fair trial.  On appeal, we must consider isolated incidents in light of the entire transcript so as to guard against magnification on appeal of instances which were of little importance in their setting.

<u>Deary</u> v. <u>City of Gloucester</u>, 9 F.3d 191, 194 (1st Cir. 1993) (internal quotation marks and citations omitted).

Ruffin first claims that the district court interrupted his cross-examination of a witness, Sergeant Terestre, and

---

[6]Ruffin suggests that he did not take up the court's invitation to make an offer of proof because of the court's later exclusion of evidence concerning Williams's job status.  But if Ruffin genuinely intended to offer evidence of Williams's reputation for <u>truthfulness</u>, as opposed to a reputation for violence, <u>see</u> <u>supra</u> note 5, then the exclusion of evidence regarding job status had no bearing on potential reputation evidence regarding truthfulness.  Even in cases where "the court telegraphed what its ruling was likely to be if . . . counsel opened the door" by offering disputed evidence, we treat the matter as forfeited if "the latter never knocked."  <u>United States</u> v. <u>Griffin</u>, 818 F.2d 97, 103 (1st Cir. 1987).  Under the circumstances, we see no reason to excuse the forfeiture.

commented on the case in a manner that would lead the jury to believe that the court adopted the defense version of precisely what happened when Ruffin kicked out the window of the cruiser. Sergeant Terestre, who was the supervisor of Williams and Griffin, testified that he arrived in response to the "officer in trouble" call at approximately the time that the cruiser window was kicked out. Part of Ruffin's theory of the case was that Sergeant Terestre had actually arrived earlier and witnessed the initial confrontation, but had attempted to cover up the beating and his failure to stop it. On cross-examination, Ruffin's counsel tried to examine Terestre about his concern for the cruiser window to show that it was just a ruse to divert attention from the beating. While it is not clear from the printed transcript, it appears that Ruffin's counsel used an unduly sarcastic tone of voice in this examination, and the court admonished him for it. The court also repeatedly urged Ruffin's counsel to "move on."

Our review of the transcript indicates that the challenged statements, taken in context, were defensible efforts to move the cross-examination along as Ruffin's counsel attempted without success to induce Terestre to admit that he had witnessed a confrontation that Terestre insisted he had not witnessed. We accord considerable deference to the district court in such matters:

> The trial judge has discretion to maintain the pace of trial, and indeed has the responsibility to oversee the

-15-

conduct of a trial so that it moves expeditiously. Therefore, encouraging counsel to move forward, forbidding counsel from eliciting duplicative testimony, or halting what the court perceived to be a waste of time, was firmly within the discretion of the trial judge.

Id. at 194-95.

Ruffin next complains about the court's sharp admonitions to witness Mary Flynn, who witnessed most of the altercation. Even from the printed transcript, it is evident that Flynn was a feisty, spirited witness with a penchant for stating her thoughts when the question called for her observations or, indeed, when there was no question before her. The court's responses escalated each time Flynn injected her opinions where none were requested. The first time she did this, the court simply instructed her to answer the questions asked; the second time, it warned Ruffin's counsel to control her; the third time, it warned Ruffin's counsel at sidebar that if he could not control the witness, the court would declare a mistrial; finally, having exhausted all of these measures, the court admonished Flynn in the presence of the jury. In reviewing this type of trial management, "the widest possible latitude is given to the judge on the scene." Rodriguez v. Banco Central Corp., 990 F.2d 7, 12 (1st Cir. 1993). The court's handling of Flynn fell well within that latitude.[7]

---

[7]We also note that the court admonished Griffin when he strayed from the question, stating at one point, "No, here is the question, can you answer the question? I don't want an explanation."

Finally, Ruffin complains that the court's admonishment of counsel was unbalanced because the court, in sustaining Ruffin's objections, did not sufficiently chastise defense counsel. Our review of the transcript reveals that the court's comments to counsel for all parties were within its discretion given the nature of the events leading to the remark, and the court displayed no improper bias against Ruffin or his counsel.

## D. Exclusion of Boston Police Department Rule 327

As part of his theory that Sergeant Terestre used the breaking of the cruiser window as a convenient distraction to divert attention from a police beating, Ruffin's counsel pressed the point that the initial 911 call had been for domestic violence and the police had never actually investigated domestic violence. Ruffin sought to introduce Boston Police Department Rule 327 ("Protection of Abused Persons"), which specifies procedures for responding to domestic violence calls. Ruffin's theory was that Terestre had decided that it would be simpler to focus on a broken cruiser window, rather than the comparatively daunting work of following through with Rule 327's requirements for investigating a domestic violence incident, and furthermore that the contents of a properly investigated domestic violence report would show that there had been no domestic violence incident, thus calling into question the defendants' version of the altercation.

The court permitted Ruffin to cross-examine Terestre about Rule 327 in general terms. However, when Ruffin attempted to mark it as an exhibit in anticipation of introducing it into evidence, defense counsel objected and the court sustained the objection. Neither the defense objection nor the court's ruling explicitly stated their grounds, but from context we can discern three reasons for excluding Rule 327, any of which would suffice.

The most obvious rationale for excluding Rule 327 is that it was irrelevant. See Fed. R. Evid. 401. The issues remaining in the case at that point were whether Williams and Griffin had used excessive force or failed to intervene when another officer used excessive force. The contents of a police department policy on responding to domestic violence incidents were not relevant to this determination.[8] Alternatively, if the purpose of introducing Rule 327 was to attack Sergeant Terestre's credibility by suggesting that he had fabricated a story to avoid paperwork, the district court had the discretion to exclude the evidence because "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may not be proved by extrinsic evidence." Fed. R. Evid. 608(b). Finally, even if the rule arguably had some relevance, it

---

[8]If the cover-up or conspiracy to cover-up claims had survived to this point, the policy might have been relevant. But the district court had already properly granted judgment as a matter of law on those claims. See infra Part III.F.

was at best peripheral, and the district court had the discretion to exclude it because "its probative value [was] substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. In any event, the district court did not abuse its discretion in excluding Rule 327.

## E.    Denial of Motion for Telephonic Deposition

One of Ruffin's listed witnesses was Margaret Finnerty, an Irish citizen and friend of Ruffin's aunt who had witnessed the incident. Finnerty had moved back to Ireland soon after the 1996 incident, but Ruffin had believed that she would fly to Boston to testify in his trial, which was scheduled for June 30, 2003. Shortly before trial, Ruffin learned that she would not, in fact, be able to make the trip. On June 5, 2003, he moved for a telephonic deposition. Defendants opposed the motion, arguing that it was untimely, procedurally defective under Fed. R. Civ. P. 28(b) (governing foreign depositions), inappropriate for the type of facts-on-the-ground testimony Finnerty would offer, and unjustified because her testimony would be cumulative with that of Ruffin's other witnesses. On June 17, 2003, the district court denied Ruffin's request, noting that Ruffin's motion "comes on the eve of

-19-

a June 30, 2003 trial and approximately nine months after the September, 2002 close of discovery in this case."[9]

We review the district court's discovery rulings for abuse of discretion, Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 63 (1st Cir. 2003), and find no error.  The combination of (1) the lateness of the request after the discovery deadline, (2) the proximity of the request to the trial date, (3) the lack of justification for not making the request earlier, (4) the potential procedural complications of a foreign deposition under Fed. R. Civ. P. 28(b), (5) Ruffin's apparent failure to recognize that such issues even existed, and (6) the fact that Finnerty's testimony, while likely helpful to Ruffin, was not indispensable, provided an adequate basis for the court, in the exercise of its broad discovery management discretion, to deny the request.

## F.    Dismissal of Cover-Up and Conspiracy Claims

At the close of Ruffin's case in chief, defendants moved for judgment as a matter of law under Fed. R. Civ. P. 50(a).  The district court granted that motion in part and denied it in part, finding that Ruffin had advanced a sufficient evidentiary basis for his excessive force and failure to intervene claims, but not for his cover-up and conspiracy to cover-up claims.  Ruffin challenges

---

[9]Ruffin argues that some additional discovery was permitted after the formal deadline.  However, that fact did not deprive the court of the ability to enforce that deadline as to other types of discovery.

-20-

this ruling on appeal.  We review the district court's grant of judgment as a matter of law <u>de novo</u>.  <u>Guilloty Perez</u> v. <u>Pierluisi</u>, 339 F.3d 43, 50 (1st Cir. 2003).

Our review indicates that the district court was exactly right in granting the motion on the cover-up and conspiracy claims but not the excessive force or failure to intervene claims. Ruffin's witnesses testified almost exclusively as to the events of the arrest and altercation itself.  Not one scintilla of evidence regarding a cover-up or conspiracy was adduced.  On appeal, Ruffin does not attempt to refute this point.  Instead, he discusses largely irrelevant procedural circumstances.  We find no error in the court's ruling.

**<u>Affirmed</u>**.