# United States Court of Appeals
## For the First Circuit

No. 07-1040

UNITED STATES OF AMERICA,

Appellee,

v.

ROSARIO MARTÍ-LÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Keenan,* Senior District Judge.

Carlos E. Géigel for appellant.
Mariana E. Bauzá-Almonte, Assistant United States Attorney,
with whom Nelson Pérez-Sosa, Assistant United States Attorney,
Chief, Appellate Division, and Rosa Emilia Rodríguez-Vélez,
United States Attorney, were on brief for appellee.

April 29, 2008

---

* Of the Southern District of New York, sitting by
designation.

**LYNCH**, **Circuit Judge**. Rosario Martí-Lón was convicted on eight counts of an eleven-count indictment, arising from her unlawful distribution of prescription drugs, 21 U.S.C. §§ 331(b) and 333(b)(1)(D); monetary transactions from unlawful activity, 18 U.S.C. § 1957(a); and false statements, id. § 1001(a)(3). She was sentenced to a total of ninety-six months' imprisonment. She appeals, alleging errors in her jury trial and sentencing errors in the determination of the amount of loss and the denial of a substantial assistance departure.

Pharmaceutical drugs from American drug companies may be purchased by resellers at different prices depending on the geographic market of the intended resale. This differential provided the opportunity for most of Martí-Lón's crimes. A drug company, SmithKline Beecham, provided Martí-Lón with drugs through two wholesalers, Medivax Services Corporation and DeVictoria Medical. The drug wholesalers represented to SmithKline Beecham that the drugs were to be sold to physicians or clinics in Puerto Rico, which, under their contracts, allowed them to receive a twenty-percent discount. The drug wholesalers then sold the drugs to Martí-Lón at a lower cost because Martí-Lón represented that the drugs were meant to be resold in Brazil. Neither representation was true. Martí-Lón did not resell the drugs in Brazil nor to physicians or clinics in Puerto Rico. Rather, she sent the drugs back for resale at higher prices to a drug wholesaler in New York,

over a three-year period, grossing about $21 million and profiting from her share of the subverted discount. She falsely represented herself as a licensed wholesaler of drugs to the New York drug reseller, when in fact she was neither a licensed wholesaler nor even a licensed pharmacist in good standing throughout the relevant time period.

In addition, Martí-Lón increased her profits by another illegal device: reselling approximately $1.5 million of prescription drugs she knew were stolen. She tried to hide these illegal sales by using multiple cashier's checks for each transaction so that each check would be in an amount under $10,000.

In her appeal, Martí-Lón concedes there was substantial evidence to support the verdict. However, she argues there were trial errors, primarily prosecutorial misconduct and error by the court as to its treatment of two jurors. The asserted juror errors were in the court's dismissal of a juror who tried to get the business card of defense counsel to handle a personal matter and the court's retention of a juror who had read a newspaper article on the case and, on questioning by the trial judge, was held to be impartial. She also attacks her sentence, arguing (a) that she was wrongly denied credit when the prosecution declined to move under U.S.S.G. § 5K1.1 for a departure based on substantial assistance, and (b) that the loss calculation was too high. None of the claims have merit. We affirm.

II.

A.      Claims of Trial Error

      1.      Alleged Prosecutorial Misconduct

Martí-Lón's argument that the prosecutor engaged in misconduct is entirely misconceived.

Martí-Lón primarily complains that the prosecution, throughout the trial and at closing, argued that the fact that Martí-Lón reported on her tax returns less than five percent of the income she received demonstrated her knowledge that she was engaged in illegal business transactions. We bypass whether Martí-Lón properly preserved her objections. There was more than adequate evidence admitted to support the government's argument, which was a fair inference from the facts. That defendant had a different view of her tax obligations[1] does not make the government's argument improper.

Martí-Lón makes a secondary argument that the government acted improperly when it made a reference in open court to a document not admitted into evidence. Because there was no objection by defense counsel, we review this claim for plain error. United States v. Dickerson, 514 F.3d 60, 63 (1st Cir. 2008). The

---

[1] The defendant's view was that she needed to report as taxable income only her net profits, that is, the amount for which she bought the drugs subtracted from the amount for which she sold the drugs. The prosecutor argued that she should have reported her gross sales as her taxable income and her cost of the drugs as a deductible expense.

prosecutor stated to the judge that the document showed defendant had obtained a municipal vendor tax license by pretending to be an attorney.

The mention of the document, as Martí-Lón concedes, was made at a sidebar and there is nothing in the record which establishes or even suggests that the jury heard the reference. That alone disposes of the claim. See Harris v. United States, 367 F.2d 633, 636 (1st Cir. 1966) (finding no prejudice because there was no showing that alleged disparaging remarks were heard by jury); see also Deary v. City of Gloucester, 9 F.3d 191, 195 (1st Cir. 1993) (noting that "incidents occurr[ing] outside of the hearing of the jury . . . could not have influenced the jury decision"). Nor does the record suggest there would have been any prejudice, even if any juror overheard. See Deary, 9 F.3d at 195 (recognizing that a juror overhearing a single comment does not create a per se presumption of prejudice).

There is no plausible claim of prosecutorial misconduct.

2.      Evidentiary Issues

We bypass the question of whether Martí-Lón has waived her evidentiary argument.[2]  Martí-Lón argues the district court

_____

[2]      Other than the caption, and a mention in the summary of argument, no argument was presented in the defendant's primary brief.  Issues "advanced for the first time in an appellant's reply brief are deemed to have been waived." United States v. Eirby, 515 F.3d 31, 36 n.4 (1st Cir. 2008); see also, e.g., United States v. Alfano, No. 07-1624, 2008 WL 867387, at *1 n.5 (1st Cir. Apr. 2, 2008); United States v. Page, Nos. 06-2006, 06-2007, ___ F.3d ___,

-5-

erred in denying defense counsel further time to uncover impeachment evidence. The defendant wished to impeach a government witness on whether he had reported income paid to him by defendant to the tax authorities by using the witness's tax returns. But defense counsel did not have the tax returns on hand in order to impeach the witness.

The district court ruled that counsel could easily have obtained the evidence earlier and the request was untimely. Based on the record, that ruling was well within the court's discretion.

### 3.    Juror Issues

Defendant's appellate claims as to juror error are about one juror who was not removed from the jury and one juror who was.

On the twelfth day of trial, a local newspaper carried a front-page article about the trial. At the request of defense counsel, the court asked each juror if he or she had read the article. One ("juror X") said he had. The court interviewed juror X in chambers. The juror stated he had read at most the first two paragraphs, which stated that defendant had reported on her tax returns only $1 million of her alleged $21 million in income. That

2008 WL 820741, at *6 n.4 (1st Cir. Mar. 28, 2008) (finding waiver when defendant "elaborates on [an] argument only in his reply brief"). We choose to address the issue on the merits.

We need not address the government's additional argument that the tax returns were inadmissible under Federal Rule of Evidence 608(b).

newspaper article statement reported what had already been admitted into evidence by the prosecution.

The juror said, in essence, the article was the truth; the article described what the prosecutor said and what happened in the case. Juror X said the story did not affect him and that he had no outside information about the case that affected him as a juror. The court reminded juror X about his oath to decide the case based only on evidence presented in court, told him not to search for additional information, and reminded him to be extra careful not to read anything else. The juror agreed. Neither counsel asked the juror any questions.[3]

Regardless of whether this claim of error was preserved by defendant, it cannot prevail. Procedurally, the judge's approach to the problem of the juror having read the news article cannot be faulted. "Our usual standard of review once the trial judge has made an appropriate inquiry . . . is an abuse of discretion standard, which recognizes that the district court 'has wide discretion in deciding how to handle and how to respond to allegations of juror bias and misconduct that arise during a

---

[3] Separately, counsel and the court reviewed the article and recognized that the second paragraph of the article also said that defendant was under a local indictment for tax evasion. The juror did not say he had seen this information. The defense counsel asked the court to explain to the juror that this part of the article referred only to allegations in a local proceeding and not to federal tax evasion charges or any charges in the current proceeding. The court did so. Neither party objected to juror X continuing as a juror.

-7-

trial.'" <u>United States</u> v. <u>Tejeda</u>, 481 F.3d 44, 52 (1st Cir. 2007)
(quoting <u>United States</u> v. <u>Rodríquez-Ortiz</u>, 455 F.3d 18, 23 (1st
Cir. 2006)).  The district court having made the proper inquiry, we
give "great weight" to the "judgment of the trial judge, who can
appraise the jurors face to face," as to whether the juror can be
impartial.  <u>United States</u> v. <u>Walsh</u>, 75 F.3d 1, 7 (1st Cir. 1996);
<u>see</u> <u>also</u> <u>United States</u> v. <u>Nazzaro</u>, 889 F.2d 1158, 1167 (1st Cir.
1989) (noting that "the law wisely affords the trier -- who is on
the front lines, sensitive to the nuances of the case before him --
substantial  discretion  in  determining"  possible  prejudicial
influence).  Here, there is no claim the information to which the
juror was exposed was totally outside of the record: the article
repeated what the prosecution had already put into evidence.  The
harm from the exposure, if any, was minimal.  The juror was
instructed not to read outside sources again and he said he
understood.  <u>See</u> <u>Tejeda</u>, 481 F.3d at 53 (recognizing that jurors'
understanding  of  a  court's  remedial  instruction  is  normally
credited).  At no point did defense counsel object.  There was no
abuse of discretion in not dismissing the juror.

　　　Martí-Lón also argues the court erred in removing another
juror ("juror Y"), whom defendant feels was favorable to the
defense.[4]  The parties do not dispute the facts.  Juror Y asked the

---

　　　[4]　　　The court also dismissed a juror who actually contacted
the prosecutor and wanted the prosecutor to take action on a matter
personal  to  the  juror.   The  defendant  does  not  challenge  that

court security officer, just before deliberations, if he could get the business card of defense counsel because juror Y had an ongoing personal legal matter.

Here, too, the court conducted an appropriate inquiry, following all procedural prerequisites. See id. at 52. The juror initially denied he made the request and the court supportably found his testimony to be less than candid. Over the objection of the defendant, the court concluded, with full support in the record, that juror Y could not be impartial; indeed, he was so emotionally involved in his own personal problems he could not focus on the evidence in the case. These conclusions are unassailable and are not challenged, much less refuted, by defendant's argument that no harm was done because juror Y never was able to make contact with defense counsel. There was no error.

B.        Alleged Sentencing Error Claims

        1.        Denial of § 5K1.1 Substantial Assistance Downward Departure

The district judge declined to grant a substantial assistance downward departure under U.S.S.G. § 5K1.1 for two reasons: (a) the government had not requested one, and (b) in the court's view, Martí-Lón was not a viable candidate for one and so the prosecutor's lack of a request was not inappropriate. A motion by the government is required in order for the court to grant a

---

juror's dismissal.

substantial assistance reduction.  U.S.S.G. § 5K1.1; see Wade v. United States, 504 U.S. 181, 184 (1992).

Martí-Lón does not directly allege that the prosecution had impermissible reasons for its decision not to move for a substantial assistance reduction, a contention we would review. United States v. Nelson-Rodriguez, 319 F.3d 12, 51-52 (1st Cir. 2003) (reviewing claim that government's reasons for failing to seek such a departure were impermissible).  Instead, she simply argues that she did provide substantial assistance.

The evidence plainly shows why there was no bad faith or impermissible motive in the prosecution's decision not to request a departure.  Defendant did not fully cooperate with the government nor did she cooperate with the goal of assisting the government. Rather, in her dealings with the purveyors of the stolen drugs, she came to the government for protection when she was threatened by one of the participants in the drug theft ring.  That participant had not been paid his share, turned to defendant for it, and when she declined, threatened her.  At that point, she worked with authorities to capture the criminal who made the extortion demands and threatened her.  This came after she had earlier obstructed justice by denying any knowledge of the drug theft ring.  Further, she never cooperated with the prosecution with information on her

primary scheme, the illegal resale of the legitimate drugs purchased from the drug companies. Her claim is without merit.[5]

## 2. Loss Calculation

The defendant claims that the district court erred in calculating the amount of loss attributable to her conduct. The district court calculated the loss separately for the two components of Martí-Lón's criminal conduct. With respect to the illegal resale of the discounted drugs, the district court multiplied the total amount of revenue Martí-Lón had received from selling the drugs by the twenty-percent discount wrongfully obtained from SmithKline Beecham. The defendant argues that this was inappropriate because there was no indication that the drug manufacturer sold its products at a loss when it gave a twenty-percent discount and that the two wholesalers from which she purchased the products may have received some of the discount. The defendant misunderstands the meaning of "loss" in the Guidelines, which requires the court to apply the greater of "actual loss," defined as the "reasonably foreseeable pecuniary harm that resulted from the offense," and "intended loss," defined as "the pecuniary

---

[5] Although in agreement with the outcome, Judge Torruella would have liked to see the government act in a more benevolent manner. In his view, irrespective of the motivations which compelled Martí-Lón to provide assistance, the government benefitted from her actions.

harm that was intended to result from the offense."[6] U.S.S.G. § 2B1.1 cmt. n.3(A)(i)-(ii). The district court found that the wrongfully obtained twenty-percent discount constituted pecuniary harm to the drug manufacturer; had the drug manufacturer sold the products to the drug wholesaler directly, it would have sold the products at the full wholesale price. It also correctly found that this harm was "a direct result of the offenses for which defendant was convicted . . ." and that the wholesalers' wrongful acquisition of the discount was "an integral part of defendant's illegal scheme."

If, alternatively, the court engaged in an intended loss calculation, U.S.S.G. § 2B1.1 cmt. n.3(A)(ii), the evidence clearly establishes that Martí-Lón was aware of and benefitted from the discounted prices given to Medivax and De Victoria. In reselling the discount vaccines to the New York drug wholesaler, it was entirely foreseeable to defendant that SmithKline Beecham was being deprived of the opportunity to sell those same vaccines at a non-discounted price. The loss amount found by the court was entirely commensurate with the degree of loss that Martí-Lón reasonably

---

[6] While termed "intended loss," the "focus [of the] loss inquiry . . . [is] on the objectively reasonable expectation of a person in [her] position at the time [she] perpetrated the fraud, not on [her] subjective intentions or hopes." United States v. Innarelli, No. 06-2400, ___ F.3d ___, slip op. at 9 (1st Cir. Apr. 29, 2008).

-12-

expected to occur.  See United States v. Innarelli, No. 06-2400, ___ F.3d ___, slip op. at 9-10, (1st Cir. Apr. 29, 2008).

With respect to the stolen drugs, the court used the amount that Martí-Lón paid for those drugs, calculated based on the cashier's checks used for payment.  The court recognized that this was, in fact, a conservative estimate of the amount of loss, since stolen goods are usually sold at a markdown.  This was supported by evidence presented at trial, which showed that the prices for the stolen drugs were almost half the price of the legitimate drugs Martí-Lón had illegally obtained.  There was no error.

Martí-Lón also makes a cursory argument that including the stolen drugs in the loss calculation was improper because she was acquitted on the conspiracy charge.  First, as the district court noted, she was convicted of distributing prescription drugs without a license and many of the drugs she distributed were stolen.  More importantly, it was entirely proper for the district court to use acquitted conduct for the purposes of sentencing so long as that conduct had been proved by a preponderance of the evidence.  See United States v. Woodward, 277 F.3d 87, 91 (1st Cir. 2002).  The court made an explicit preponderance of the evidence ruling here, which is supported by overwhelming evidence.

Defendant's conviction and sentence are affirmed.