Carmen L. RODRÍGUEZ–
GARCÍA, Plaintiff,

v.

MUNICIPALITY OF CAGUAS,
et al., Defendants.

Civil No. 01–2525 (BJM).

United States District Court,
D. Puerto Rico.

March 18, 2011.

Godwin Aldarondo–Girald, Laura Maldonado–Rodriguez, Laura Maldonado Law Office, Ericson Sanchez–Preks, Aldarondo Girald Law Office, San Juan, PR, for Plaintiff.

Grisselle Gonzalez–Negron, Luis E. Pabon–Roca, Faccio & Pabon Roca, Claudia Latimer–Bengoa, Jose Enrico Valenzuela–Alvarado, Christian E. Pagan–Cordoliani, Departamento De Justicia, Salvador J. Antonetti–Stutts, O'Neill & Borges, San Juan, PR, for Defendants.

### ORDER AWARDING ATTORNEYS' FEES

BRUCE J. McGIVERIN, United States Magistrate Judge.

Plaintiff Carmen Rodríguez–García ("Rodríguez") brought this civil rights action against her employer, the Municipality of Caguas ("Municipality"), its mayor, the late William Miranda–Marín ("Miranda"), and its vice-mayor, Wilfredo Puig, in their personal and official capacities, for retaliation and political discrimination under 42 U.S.C. § 1983 ("Section 1983") and other provisions of federal and Puerto Rico law. (Docket No. 1). After three appeals and two jury trials, plaintiff ultimately prevailed against the Municipality and Miranda in his personal capacity on a Section 1983 claim of retaliation for exercising her First Amendment free speech right. (Docket Nos. 303, 304, 323, 324, 325).

Plaintiff now seeks $769,966.37 in attorneys' fees and expenses incurred over nine years of litigation, pursuant to the fee-shifting provision of 42 U.S.C. § 1988 ("Section 1988"). (Docket No. 326). Defendants oppose (Docket No. 350), plaintiff replies (Docket No. 353–1), and defendants sur-reply. (Docket No. 367). Plaintiff also requests reconsideration of the Clerk of Court's taxation of costs on behalf of plaintiff. (Docket No. 339). After close examination, the court **grants in part** plaintiff's motion for attorneys' fees and **denies** plaintiff's motion for reconsideration of taxation of costs, as explained in more detail below.

### PROCEDURAL HISTORY

The facts of this case are well-known by this juncture, so I will recite only the procedural history as relevant to the requested fee award. Plaintiff filed the instant complaint on November 7, 2001, against the Municipality and Miranda and Puig in their personal and official capacities, claiming violations of 42 U.S.C. §§ 1981 ("Section 1981"), 1983, and 1985 ("Section 1985") and the constitution and laws of Puerto Rico. (Docket No. 1). After the court granted summary judgment for defendants on limitations grounds, plaintiff appealed, and the First Circuit vacated and remanded, awarding costs to plaintiff. *Rodríguez–García v. Municipality of Caguas,* 354 F.3d 91 (1st Cir.2004) (*Rodríguez I*).

On remand, this court granted summary judgment for defendants on plaintiff's Section 1981 and 1985 claims and her Section 1983 political discrimination claim. (Docket No. 74). Plaintiff went to trial against Puig and Miranda on a Section 1983 retaliation claim, on a theory that their actions subjected the municipality to liability as well. The court granted judgment for Miranda as a matter of law, and

the jury found the municipality, but not Puig, liable on the retaliation claim. Finding the jury's verdict inconsistent with plaintiff's theory of the case, the court entered judgment as a matter of law for the municipality, and plaintiff appealed. The First Circuit affirmed the grant of summary judgment on the political discrimination claim, the judgment in favor of Puig on the retaliation claim, and the vacation of the jury award against the municipality, but reversed and remanded for a new trial on the retaliation claim against Miranda and the municipality. The parties were ordered to bear their own costs. *Rodriguez–Garcia v. Municipality of Caguas*, 495 F.3d 1 (1st Cir.2007) (*Rodriguez II* ).

After the second appeal, plaintiff proceeded to a jury trial before me on the retaliation claim as well as (for the first time) a claim under Puerto Rico's whistleblower statute, Law 115, 29 L.P.R.A. § 194 *et seq.*, which provides for double damages. The jury found in plaintiff's favor against both Miranda and the municipality and awarded $350,000 in compensatory damages. However, I subsequently found that plaintiff had waived any Law 115 claim prior to the first trial and thus did not double the damages award in entering an amended judgment for plaintiff. (Docket No. 303). On the parties' cross-appeals, the First Circuit affirmed in all respects and ordered each party to bear its own costs. *Rodríguez–García v. Miranda–Marín*, 610 F.3d 756 (1st Cir.2010) (*Rodríguez–Garcia III* ). The instant motion followed. (Docket No. 326). Defendants unsuccessfully petitioned the Supreme Court for a writ of *certiorari. Miranda–Marín v. Rodriguez–Garcia,* —— U.S. ——, 131 S.Ct. 1016, 178 L.Ed.2d 829 (2011) (mem.).

**ANALYSIS**

■ Section 1988 permits the court to allow the prevailing party in a Section 1983 action "a reasonable attorney's fee." 42 U.S.C. § 1988. "[P]laintiffs may be considered prevailing parties for attorney's fee purposes if they succeed on any significant issue in litigation which achieves some of the benefit sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978); internal quotations omitted). Here, plaintiff's political discrimination and Section 1981 and 1985 claims were dismissed on summary judgment prior to the first trial, and I disallowed the Law 115 claim after the second trial. However, plaintiff succeeded against two defendants on her Section 1983 retaliation claim—the primary theory on which she went to trial both times—and was awarded $350,000 in compensatory damages. Accordingly, I find that she is a prevailing party for Section 1988 fee-shifting purposes. I turn, then, to the determination of a reasonable fee amount.

The court has "great discretion in deciding what claimed legal services should be compensated." *Brewster v. Dukakis,* 3 F.3d 488, 492 (1st Cir.1993). Plaintiffs who substantially prevail may not necessarily recover the totality of their requested fees. *See Culebras Enters. Corp. v. Rivera–Rios,* 846 F.2d 94, 102 (1st Cir. 1988). Instead, the court calculates a reasonable fee award using the "lodestar" method: a reasonable hourly rate multiplied by the number of hours reasonably spent on the litigation. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. Under the lodestar approach, the judge first calculates the time counsel spent on the case, subtracts duplicative, unproductive, or excessive hours, and then applies prevailing hourly billing rates in the community, taking into account counsel's qualifications, experience, and specialized competence. *Gay Officers Action League v. Puerto Rico,* 247

F.3d 288, 295 (1st Cir.2001). Once calculated, "the lodestar represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir.1992).

Plaintiff seeks compensation for $744,642.50 in attorneys' fees based on 2,425.75 hours of work, and $25,323.87 in litigation expenses, for a total of $769,966.37. Plaintiff's motion is supported by timesheets, affidavits, and *curricula vitae* for the three plaintiff's attorneys, Godwin Aldarondo Girald ("Aldarondo"), Laura Maldonado Rodríguez ("Maldonado"), and Ericson Sánchez Preks ("Sánchez"). The requested fees and expenses cover the time period from the commencement of the representation on September 18, 2001 through the date of oral argument in the third appeal, November 5, 2009. (Docket Nos. 326, 326–1, 326–2, 326–3, 326–4, 326–5, 326–6). Plaintiff's attorneys claim the following hours and hourly rates (in court/out of court): Aldarondo, 186.00 at $350/1,064.75 at $300; Maldonado, 174.50 at $350/341.75 at $300; Sánchez, 108.50 at $270/550.25 at $240.[1] (Docket No. 326, p. 19).

Defendants oppose the fee motion, arguing that the time entries are too vague, the rates claimed are too high and should be reduced, and the court should disallow, *inter alia*, all hours claimed for appeals work and all of attorney Sánchez's hours. (Docket No. 350). I will address each of defendants' arguments for downward reductions in the fee award in turn, using the timesheets provided by plaintiff. (Docket Nos. 326–1, 326–2).

## 1. Hourly Rates

The lodestar method requires the court to employ an hourly rate in line with the prevailing rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.[2] *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In the fee-shifting context, the court concerns itself primarily with the market value of counsel's services, so the rate that private counsel actually charges for services, while not conclusive, is a reliable indicium of market value. *See United States v. One Star Class*, 546 F.3d 26, 28 (1st Cir.2008). The court may also rely upon its own knowledge of attorneys' fees in the community in reaching its determination. *Rodriguez v. Int'l Coll. of Bus. & Tech., Inc.*, 356 F.Supp.2d 92, 96 (D.P.R. 2005) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)).

Defendants argue that the hourly billing rates claimed by plaintiff's counsel are excessive. They ask the court to reduce Aldarondo's and Maldonado's rates to $125 and Sánchez's to $100 (for both in-court and out-of-court work), based on what defendants contend are the prevailing rates for government and private practice attorneys whose experience is comparable to

---

1. Attorney Sánchez's rates are incorrectly claimed at one point in the motion as $250/$200 (Docket No. 326, p. 2), but correctly claimed elsewhere as $270/$240. (Docket Nos. 326, p. 19; 326–2, p. 32). As explained below, I reject defendants' request that all of Sánchez's hours be disallowed.

2. I have reviewed counsel's *curricula vitae* and note that attorney Aldarondo has thirty-two years' experience as an attorney, Maldonado thirty, and Sánchez twenty. Aldarondo has taught and published on labor and employment law, and both he and Maldonado have appellate practice experience outside of the instant matter. (Docket Nos. 326–4, 326–5, 326–6).

that of the three plaintiff's attorneys.[3] (Docket No. 350, p. 7–9). Both parties have cited recent fee award orders from this court and the First Circuit that support their respective claims of reasonable hourly rates. (Docket Nos. 326, p. 11–13; 350, p. 7–9).

█ Plaintiff cites only one case supporting the reasonableness of hourly rates as high as those requested for Aldarondo and Maldonado. *See Marin v. Keisler*, 2007 WL 2973844 (D.N.H. Oct. 10, 2007). The cases cited by plaintiff generally support as reasonable rates ranging from $190 to $270. Defendants cite, and the court's own research has found, cases approving hourly rates ranging from $175 to $250 for more experienced attorneys and $100 to $150 for less experienced attorneys. *E.g., Torres Santiago v. Municipality of Adjuntas* (Civ. No. 06–1116, Docket No. 213) (collecting cases); *Rodriguez Sostre v. Municipio De Canovanas*, 251 F.Supp.2d 1055 (D.P.R.2003) (finding reasonable two attorneys' rates of $225 and $250 per hour in court, $200 per hour out of court). Having reviewed plaintiff's submissions and defendants' objection and taking into account my own knowledge of attorneys' fees in the community, I find that the rates requested by plaintiff are not reasonable and discount them accordingly to the following (in court/out of court): Aldarondo, $250/$225; Maldonado, $250/$225; Sánchez, $175/$150.

## 2. Appeals Work

█ Next, defendants argue that the court should not compensate plaintiff for hours expended on any of the three appeals in this case because the district court lacks the authority to do so. (Docket No. 350, p. 9–11). I find this argument unpersuasive. While some courts of appeals have held otherwise, *e.g., Crumpacker v. State of Kansas*, 474 F.3d 747, 755–56 (10th Cir.2007); *Cummings v. Connell*, 402 F.3d 936, 947–48 (9th Cir.2005); *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005), the First Circuit has generally held that the district court has the power to award reasonable attorney's fees for work performed in the court of appeals in the context of federal fee-shifting statutes. *Souza v. Southworth*, 564 F.2d 609, 613–14 (1st Cir.1977) (rejecting defendant's argument that district court in civil rights suit lacked authority to make award for appellate work). The First Circuit in *Souza* reasoned that "a district court cannot fully evaluate [particular] litigation without taking into account the history of the dispute on appeal. Having evaluated the appellate work of the attorneys, the district court properly may assign a price tag to it." *Id.* at 613–14. *Accord, D.C. Metro. Police Dep't v. Stanley*, 951 A.2d 65, 67–68 (D.C. 2008) ("[I]n cases where a party seeks to recover statutorily authorized attorney's fees for work completed on an appeal to this court, the request normally should be submitted to the trial court in which the proceeding arose.") (collecting cases considering the issue).

Allowing the district court to make this determination promotes judicial economy and helps conserve a prevailing party's award. *See Aubin v. Fudala*, 821 F.2d 45,

**3.** I am not persuaded by defendants' argument that plaintiff's counsel should be compensated at $125, the hourly rate for attorneys on the Criminal Justice Act ("CJA") panel in this district, simply because attorney Maldonado is a CJA panel member. (Docket No. 350, p. 8). Attorneys who apply to serve on the CJA panel knowingly forgo the opportunity to devote their time to more lucrative matters in order to represent indigent criminal defendants, and I reject the suggestion that they should be penalized for that choice by a reduction of their hourly rates to their CJA compensation rate in fee-shifting cases where they have successfully represented private clients.

47–48 (1st Cir.1987) ("lawyers have a responsibility in limiting litigation over attorneys' fees"). "It would be a waste of judicial resources if [on remand after appeal on the merits] a district court were barred from assessing the appeal in considering a fee award." *Souza,* 564 F.2d at 613. Therefore, the First Circuit on several occasions has granted reasonable appellate attorney's fees and costs but remanded to the trial court to determine the amount. *Powell v. Alexander,* 391 F.3d 1, 24 (1st Cir.2004); *Aubin,* 821 F.2d at 47–48. *Cf. Astro–Med, Inc. v. Plant,* 2010 WL 537101, at *2 (D.R.I. Feb. 12, 2010) (in non-civil rights case, "the fact that the Court of Appeals did not award attorneys' fees ... does not prevent this Court from doing so") (citing *Souza,* 564 F.2d at 613; further citation omitted). The First Circuit has upheld, and even increased, Section 1988 fee awards by trial courts that included appellate attorney's fees. *Schneider v. Colegio de Abogados de P.R.,* 187 F.3d 30, 32–33 (1st Cir.1999) (per curiam) (upholding portion of fee award pertaining to federal court proceedings, where district court refused to discount award for time spent by plaintiffs pursuing unsuccessful or partially successful appeals to First Circuit); *Furtado v. Bishop,* 635 F.2d 915, 921, 922 n. 11 (1st Cir.1980) (noting that $1,000 fee allowed by trial court for appellate oral argument was uncontested by defendants on appeal but concluding "that the appellate component of the fee award ... should be somewhat larger than was awarded by the district court"). Accordingly, it is appropriate for this court to award attorneys' fees to plaintiff for hours reasonably expended in the three appeals now that the substantive portion of the case has finally concluded.

Defendants claim that the fee award in this case should be controlled by this court's decision in *Diffenderfer v. Gomez–Colon,* 606 F.Supp.2d 222, 228 (D.P.R. 2009), *aff'd,* 587 F.3d 445 (1st Cir.2009). In *Diffenderfer,* the court declined to award attorney's fees to the plaintiffs for time spent opposing an interlocutory appeal brought by one of the defendants from this court's order granting injunctive relief. The First Circuit dismissed the appeal one week after it was filed for lack of jurisdiction, as the defendant who brought the appeal lacked standing. (Civ. No. 08–1918, Docket Nos. 35, 56). In considering the plaintiffs' fee application, this court reasoned that "[p]laintiffs may be entitled to damages if they can demonstrate that the appeal to the First Circuit was frivolous," but that Federal Rule of Appellate Procedure 38 ("Rule 38"), which governs damages (including attorney's fees) and costs for frivolous appeals, requires the First Circuit, not the district court, to make such an award. 606 F.Supp.2d at 228 (citing Fed. R.App. P. 38; *Flip Side Prods., Inc. v. Jam Prods., Ltd.,* 843 F.2d 1024, 1037 (7th Cir.1988)).

Here, by contrast, plaintiff brought the first two appeals (successfully), and *Rodriguez–Garcia III* involved cross-appeals by both parties. The appeals involved substantive questions of law which were fully briefed and argued before the First Circuit; each appeal, particularly the second, was crucial to the results ultimately obtained in this case. Accordingly, the frivolous appeal rationale for applying Rule 38 to attorney's fees for the short-lived interlocutory appeal in *Diffenderfer* is inapposite. As plaintiff notes, reasonable fees are to be "determined by examination of the entire case," including appeals. *Schneider,* 187 F.3d at 48 (Lipez, J., concurring) (citation and quotation omitted). And it is apparent from the *Souza* line of cases that the district court may properly make that determination with regard to appeals. *See id.* ("I have no difficulty concluding that the district court was with-

in its discretion in refusing to discount hours spent in ... defending appeals."). Therefore, given this case's important distinctions from *Diffenderfer* and the key role of the appeals in the final result in this case, I will not discount appellate fees from the fee award.

Defendants do not make any other arguments or specific objections to the time plaintiff's counsel expended on appellate work (totaling approximately 660.5 hours). Having reviewed the attorneys' time entries and absent any compelling argument by defendants, I will not reduce the number of hours claimed for the appeals simply because they pertain to appellate rather than trial court work. However, the hours billed for the appeals are still subject to reduction on other grounds, as detailed below.

### 3. Quarter–Hour Time Computation

Next, defendants challenge plaintiff's counsel's practice of billing in quarter-hour increments rather than in tenths of an hour. The court may decide to apply a percentage reduction of fees in response to practices that tend to inflate hours across the board. *Diffenderfer*, 606 F.Supp.2d at 230–31 (citing *Lewis v. Kendrick*, 944 F.2d 949, 957–58 (1st Cir.1991); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948–49 (9th Cir.2007)). Defendants argue that plaintiff's counsel frequently billed a quarter-hour or more for menial tasks, such as reading line orders, that should take only a few minutes. Accordingly, defendants urge the court to reduce the hours billed across the board in order to counteract this inflationary practice. (Docket No. 350, p. 11–12). This court has often applied such reductions at percentages ap-

propriate to the extent of the overbilling, using the across-the-board approach where the inflated time entries were too numerous to discount on an individual basis. *E.g., Diffenderfer*, 606 F.Supp.2d at 229 (applying 20% reduction across the board where over fifty menial items were billed at quarter-hour increments); *see also Santiago v. Commonwealth*, 2010 WL 3419985, at *3–*4 (D.P.R. Aug. 26, 2010) (reducing time allocation from 0.25 hour to 0.1 hour in specific instances of overbilling for menial tasks, where entire invoice contained only thirty time entries); *Peguero–Moronta v. Gabriel–Santiago*, 2010 WL 1444863, at *2 (D.P.R. Apr. 8, 2010) (10% reduction across the board for time entries spanning 8.5–year litigation); *Cuadrado–Ramos, ex rel. Cuadrado v. Commonwealth*, 2010 WL 1416016, at *3 (D.P.R. Mar. 31, 2010) (applying 5% reduction to total hours billed where overbilling for menial items was less egregious than in *Diffenderfer* ).

■ Here, a review of the timesheets submitted by plaintiff's counsel reveals over sixty instances where counsel billed a quarter-hour, a half-hour, or even a full hour for reading line orders and other short orders in the docket and short, boilerplate motions by defendants, such as motions for extensions of time.[4] In light of the extent of this practice, I impose a 20% reduction across the board to the hours billed by plaintiff's attorneys.

### 4. Time Billed for Meetings Among Counsel and Legal Research

■ Next, defendants challenge numerous timesheet entries for being too vague for the court to allow the hours claimed. The plaintiff bears the burden of providing sufficiently detailed contemporaneous rec-

---

4. *See* time entries corresponding to Docket Nos. 6, 7, 8, 10, 11, 14, 20, 21, 28, 34, 38, 39, 41, 45, 46, 49, 51, 52, 55, 56, 71, 72, 74, 75, 78, 80, 81, 151, 152, 153, 154, 155, 158, 159, 160, 162, 163, 164, 167, 170, 176, 205, 207, 208, 209, 212, 228, 241, 270, 279, 286, 292, 294, 296, 297, 301. (Docket Nos. 326–1, 326–2).

ords of the time expended and tasks performed by her attorneys in order to allow the court to determine their reasonableness. *See Tenn. Gas Pipeline Co. v. 104 Acres of Land,* 32 F.3d 632, 634 (1st Cir. 1994). "In order to recover fees, attorneys must submit a full and precise accounting of their time, including specific information about number of hours, dates, and the nature of the work performed." *Deary v. City of Gloucester,* 9 F.3d 191, 197–98 (1st Cir.1993).

Defendants contest plaintiff's counsel's practice of logging time entries that commingle time spent meeting with co-counsel together with time spent in research or drafting a document, instead of breaking those tasks down as separate entries. Defendants also challenge numerous time entries for legal research that do not specify exactly how counsel expended the time. Defendants argue that this lack of detail and specificity should result in a severe reduction or disallowance of those hours. (Docket No. 350, p. 12–14) (citing contested entries).

■ On review of the timesheets submitted, I find that entries regarding meetings among co-counsel typically state briefly what the meeting was about, although this is not universally the case. To take a random example, Aldarondo's and Sánchez's time entries for December 6, 2007 describe the nature of a meeting held that day among the three attorneys, while their time entries for the very next day list another meeting without stating its purpose. Both attorneys' entries for those days lump together time spent on the meetings with time spent on other tasks, illustrating the imprecision complained of by defendants.[5] (Docket No. 326–2, p. 9).

On balance, however, I find that counsel's timesheets describe their work in sufficient detail, both as regards legal research and meetings with co-counsel. The timesheets list the hours worked by each attorney in chronological order, thereby easing the court's reasonableness determination. Moreover, the attorneys submitted affidavits stating that the timesheets are based upon contemporaneous records of time dedicated to the case. (Docket No. 326–3). Accordingly, I will not disallow any hours for lack of precision in counsel's time records.

### 5. Attorney Sánchez's Hours

■ Defendants ask the court to disallow Sánchez's hours entirely because his work amounts to overstaffing of the case. (Docket No. 350, p. 14–15). "The time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted." *Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986) (citation and quotation omitted). A trial court should zealously guard against any propensity to overstaff litigation in the fee-shifting milieu, since statutes such as Section 1988 are not meant to serve as full employment programs for lawyers. *Lipsett,* 975 F.2d at 938–39 (citations omitted). The trial court is in the best position to resolve staffing issues given its familiarity with the nuances of the particular case. *Id.* at 939 (citation omitted).

■ Defendants contend that Sánchez's work consisted largely of paralegal research or clerical-type work with little active participation during trial. "[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." *Lipsett,* 975 F.2d at 940

---

5. Counsel's habit of commingling tasks into a single time entry is taken to an extreme at certain points, such as Aldarondo's January 21, 2008 time entry, which bills 8.00 hours for seven discrete tasks. (Docket No. 326–2, p. 12). While I will not discount counsel's hours for this practice, neither do I condone it.

(citations omitted). Hours billed by an attorney for clerical work "should not be completely eliminated but should be compensated at a less extravagant rate." *Id.* (citation omitted). Sánchez's timesheets show that he expended at least 24.8 hours in activities that can fairly be deemed clerical, such as requesting or sending transcripts or evidence, organizing case files and exhibits, and making telephone calls regarding scheduling matters.[6] While this is far from the bulk of the hours Sánchez billed, it is nevertheless inappropriate to compensate him for these hours at the same billing rate as for legal work. Rather than attempt to determine the prevailing hourly rate for clerical work, as to which defendants have presented no evidence, the court in its discretion will reduce the time claimed by Sánchez by ten out-of-court hours and two in-court hours. *See Guillemard–Ginorio v. Contreras,* 603 F.Supp.2d 301, 322 (D.P.R.2009) (reducing hours billed by attorney to account for items that were clerical in nature).

Aside from the issue of Sánchez's clerical-type work, I do not agree with defendants that Sánchez's hours should be disallowed. "Since a litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance." Thus a multiple-attorney team may be "reasonable and necessary given the nature of the case," considering "the complexity of the litigation, the considerable burdens it placed upon plaintiff's counsel, the number of defendants, and the defense's . . . staffing patterns." *Lipsett,* 975 F.2d at 939 (citations and quotation omitted).

 As plaintiff points out, she ultimately prevailed after two jury trials against two (initially three) defendants represented by no fewer than six attorneys. After settlement talks failed, the trial conducted before me lasted eleven days (undermining defendants' characterization of the action as a "garden variety" employment discrimination case), and I was called upon to resolve numerous motions in *limine* filed by both parties in the weeks leading up to trial. Given the vigorous defense mounted by defendants' large legal team, it was not unreasonable for plaintiff to staff her side with an attorney to conduct legal research and draft comparatively minor motions while two more experienced attorneys handled much of the actual trial work and the oral arguments on appeal. I therefore decline to reduce or disallow Sánchez's hours except as already noted.

### 6. Failed Claims and Downward or Upward Adjustments

 In fashioning the fee award lodestar, the court may adjust the hours claimed to eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case. Subject to principles of interconnectedness, the court may disallow time spent in litigating failed claims. *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 336 (1st Cir.2008) (citing *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933; *Lipsett,* 975 F.2d at 940–41). If the claims on which plaintiff lost were unrelated to the successful ones, no fees may be awarded for the work on the unsuccessful claims. If, however, the losing claims included "a common core of facts" or were "based on related legal theories" linking them to the successful claim, the award may include compensation for legal work performed on the unsuccessful claims. *Garrity v. Sununu,*

---

**6.** *See* the following Sánchez time entries: 2005: January 3, 5; March 17; July 5.2006: June 6; October 5.2008: January 25, 29, 30; October 29; November 6, 7, 12; December 22. 2009: January 9, 13, 14, 15; February 16. (Docket Nos. 326–1, 326–2).

752 F.2d 727, 734 (1st Cir.1984) (quoting *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933). After determining reasonable hours and reasonable rate, the court must still account for other considerations that may lead it to adjust the lodestar upward or downward, based on such factors as the results obtained and "the time actually required for the efficacious handling of the matter." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *Torres–Rivera*, 524 F.3d at 331 (citations omitted).

■ Here, plaintiff prevailed on the retaliation claim as against the Municipality and Miranda in his personal capacity, but did not succeed on the political discrimination, Sections 1981 and 1985, and Law 115 claims or as to defendant Puig.[7] The Law 115 claim was based on a related legal theory and the same core facts as the successful Section 1983 claim: that plaintiff was retaliated against by her employer for protected whistleblowing activity. Accordingly, I will not deduct any hours for time spent on the Law 115 claim. Likewise, while the political discrimination claim was premised upon plaintiff's alleged political party membership rather than her whistleblowing activity, it and the retaliation claim are still "separate but related claims": both were brought under Section 1983 pursuant to the adverse employment action of plaintiff's job transfer. (Docket No. 74, p. 2–4, 8). I therefore will not disallow hours for the political discrimination claim.

■ I will, however, disallow hours for plaintiff's unsuccessful claims under Sections 1981 and 1985. As the court noted when granting summary judgment on those claims (four years into the litigation),

the statutes are aimed at race- and class-based discrimination, *see* 42 U.S.C. §§ 1981, 1985, and plaintiff did not allege any such discrimination. (Docket No. 74, p. 10–11). Absent any facts or legal theory in common with the Section 1983 retaliation claim, no fees may be awarded for work on the Sections 1981 and 1985 claims. In view of the approximately thirty hours expended by attorney Aldarondo on the complaint and on opposing defendants' summary judgment motion prior to the court's order granting summary judgment on those claims (*see* Docket No. 326-1, p. 2–7), the court disallows five out-of-court hours from Aldarondo.

Defendants make no specific objections regarding "the time and labor actually required for the efficacious handling of the matter." *Torres–Rivera*, 524 F.3d at 336. In light of the results obtained—a substantial damages award against two of the three original defendants on the primary theory on which plaintiff went to trial—I find it unnecessary to make further adjustments to the lodestar amount, which I will now proceed to calculate.

### 7. Computation of Fee Award

Using the adjustments and deductions outlined above, the court determines a reasonable award of attorneys' fees in keeping with the lodestar method as follows:

*Aldarondo:*

Out of court: $.80(1{,}064.75{-}5) \times \$225 = \$190{,}755.00$

In court: $.80(186) \times \$250 = \$37{,}200.00$

Total: $227,955.00 for 996.6 hours

---

**7.** While the introduction to defendants' motion in opposition states that the fee award should be reduced "pursuant to Plaintiff's limited success in the case and in consideration of the amount involved and the results obtained" (Docket No. 350, p. 1–2), the motion never develops this argument. Regardless, the court considers the issue as part of the *Hensley* framework.

*Maldonado:*

Out of court: .80(341.75) × $225 = $61,515.00

In court: .80(174.5) × $250 = $34,900.00

Total: $96,415.00 for 413.0 hours

*Sánchez:*

Out of court: .80(550.25–10) × $150 = $64,830.00

In court: .80(108.5–2) × $175 = $14,910.00

Total: $79,740.00 for 517.4 hours

*Grand Total:* $404,110.00 for 1927.0 hours

### 8. Plaintiff's Motion Requesting Review of Taxation of Costs

■ The court should allow costs to a prevailing party, unless a statute, Federal Rule of Civil Procedure, or court order states otherwise. FED. R. CIV. P. 54(d)(1). However, a prevailing party must clearly document costs in order to allow the court to ascertain whether the costs were reasonable and necessary to the litigation, or the costs may be denied. *See Pan Am. Grain Mfg. Co. v. P.R. Ports Auth.*, 193 F.R.D. 26, 35 (D.P.R.2000) (citation omitted).

In the motion for attorney's fees, plaintiff requests compensation for litigation expenses totaling $25,323.87, as detailed in the bill of costs filed on March 28, 2008, after the conclusion of the second trial. (Docket Nos. 287; 326, p. 19–20). In the bill of costs, plaintiff requested and submitted documentation for a total of $25,320.87 [8] in itemized costs, including the Clerk of Court's filing fee, process servers, interpreters and translations, photocopies, lay and expert witness fees, transcripts,

and LexisNexis research charges. (*Id.*, p. 12).

After plaintiff filed the attorney's fees motion, the Clerk of Court taxed costs on behalf of plaintiff in the amount of $12,692.07, pursuant to 28 U.S.C. § 1920 ("Section 1920"). The Clerk excluded, *inter alia*, costs related to interpretation services rendered by Orlando Gonzalez because plaintiff did not properly submit information to substantiate the costs incurred. (Docket No. 327, p. 3) (citing *Pan American Grain*). Plaintiff asks the court to review and re-tax these costs, which total $2,400.00. (Docket No. 339). Aside from that line item, plaintiff accepts the Clerk's other adjustments to the bill of costs. (Docket No. 339, p. 2).

■ Plaintiff submits a page of the transcript from the second trial in which Gonzalez was placed under oath as evidence of the dates Gonzalez's costs were incurred. (Docket No. 339–1, p. 1–2). As evidence of the amount of those costs, plaintiff submits the image of a check made out to Gonzalez from Aldarondo's law firm (*id.*, p. 3–4), and also points to an alleged invoice from Gonzalez which plaintiff submitted with the bill of costs. (Docket No. 287–2, p. 14). However, plaintiff did not submit certified translations of these documents, in violation of Local Civil Rule 5(g) ("Rule 5(g)"), so the court cannot consider them. Furthermore, even if admissible, this evidence, like the single page from the trial transcript, is too vague to corroborate plaintiff's allegations that Gonzalez served as interpreter for 32 hours over four and a half days of trial. (Docket No. 339, p. 1–2). Accordingly, I **deny** plaintiff's motion requesting review and re-taxation of the $2,400.00 claimed for interpretation services.

---

**8.** The difference of $3.00 between the amount claimed in the bill of costs (Docket No. 287, p. 11, 12) and the amount claimed in the instant motion (Docket No. 326, p. 20) is an apparent clerical error; the correct total amount is the smaller of the two.

Section 1988 allows reimbursement of a prevailing party's reasonable costs. *See Poy v. Boutselis,* 352 F.3d 479, 490 (1st Cir.2003) (citation omitted). "[E]xpenses ... [that] are not deemed 'costs' within the meaning of the federal statute that provides for recovery of costs by a prevailing party ... may be recovered where appropriate as part of attorneys' fees under the typical federal fee-shifting statute." *Attrezzi, LLC v. Maytag Corp.,* 436 F.3d 32, 43 (1st Cir.2006) (citing 28 U.S.C. § 1920; *Palmigiano v. Garrahy,* 707 F.2d 636, 637 (1st Cir.1983) (interpreting Section 1988); further citation omitted). Therefore, certain reasonable out-of-pocket expenses normally billed to the client may be included in costs awarded to a prevailing party under Section 1988. *Poy,* 352 F.3d at 490 (citation omitted); *Palmigiano,* 707 F.2d at 637.

■ The Clerk's figure of $12,692.07 in taxable costs thus does not represent the figure allowable to plaintiff, but it constitutes a starting point for the Section 1988 cost inquiry. Having reviewed the Clerk's reasoning for taxing certain amounts, I will include those costs taxed by the Clerk in the reasonable costs to be awarded to plaintiff. The Clerk denied costs of $748.80 in LexisNexis searches on the grounds that such out-of-pocket expenses are not recoverable under Section 1920. That item may be recovered under Section 1988. *See Attrezzi, LLC,* 436 F.3d at 43 (computer research expenses are recoverable).

In addition to Gonzalez's interpretation costs, the Clerk denied $2,000.00 in costs for document and evidence translation for lack of adequate supporting documentation and information. (Docket No. 327, p. 3–4).

Plaintiff's documentation for these two disallowed items is likewise insufficient to show that those expenses are "reasonable and necessary" under Section 1988. *Palmigiano,* 707 F.2d at 637. Accordingly, I disallow those costs, which total $4,200.00. The Clerk also denied $7,500.00 in expert witness fees. (Docket No. 327, p. 4–5). In awarding an attorney's fee under Section 1983, "the court, in its discretion, may include expert fees as part of the attorney's fee." 42 U.S.C. § 1988(c). However, there is no certified English translation of the invoice provided for $5,500.00 of the expert witness's fee, in violation of Rule 5(g), and the exhibit of a check image made out to the expert for the remaining $2,000.00 claimed likewise does not provide the court with enough information to determine the reasonableness of the fee. (Docket Nos. 287, p. 8; 287–4, p. 1–2). I therefore disallow the $7,500.00 claimed in expert witness fees.

Last, the First Circuit allowed costs to plaintiff in the first appeal, but ordered the parties to bear their own costs in the later appeals.[9] *Rodríguez–Garcia I,* 354 F.3d at 100; *Rodríguez–Garcia II,* 495 F.3d at 14; *Rodríguez–Garcia III,* 610 F.3d at 775. It appears, however, that plaintiff may have sought the costs of the first appeal directly from the First Circuit. A review of the bill of costs, on which plaintiff's motion for attorney's fees is based, demonstrates that it does not include any appeals costs. (Docket No. 287). Defendants allege that plaintiff was "awarded around $400 in costs" in the first appeal (Docket No. 350, p. 9), and attorney Sánchez billed time for having "[d]rafted [a] cost report for the Circuit Court" after the first appeal. (Docket No. 326–1, p. 10). Absent any

---

9. In their motion opposing plaintiff's attorney's fees application, defendants note the First Circuit's orders that the parties bear their own costs for the second and third appeal, but do not otherwise challenge plaintiff's request for litigation expenses. (Docket No. 350, p. 9).

specific request for or evidence of the costs incurred in the first appeal, I will not add any amount to the cost award.

In light of the foregoing, I allow costs to plaintiff in the amount of $13,440.87.

## CONCLUSION

As detailed above, the court **DENIES** plaintiff's motion for reconsideration of taxation of costs (Docket No. 339) and **GRANTS IN PART** plaintiff's motion for attorneys' fees and costs jointly and severally against defendants Municipality and Miranda in his personal capacity. (Docket No. 326). The court awards plaintiff $404,110.00 in attorneys' fees and $13,440.87 in litigation costs, for a total of $417,550.87.

**IT IS SO ORDERED.**